**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AURELIO DURAN GONZALES; MARIA C. ESTRADA; MARIA LUISA MARTINEZ DE MUNGUIA; IRMA PALACIOS DE BANUELOS; LUCIA MUNIZ DE ANDRADE; KARINA NORIS; ADRIANA POUPARINA, *Plaintiffs-Appellants*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY and JANET NAPOLITANO, Secretary of the Department of Homeland Security, *Defendants-Appellees*. | No. 09-35174 <br><br> D.C. No. 2:06-cv-01411-MJP <br><br><br> ORDER AND OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted
September 21, 2011—San Francisco, California

Filed March 29, 2013

Before: William C. Canby, Jr., Barry G. Silverman,
and Consuelo M. Callahan, Circuit Judges.

Order;
Opinion by Judge Silverman;
Dissent by Judge Callahan

# SUMMARY[*]

## Immigration

The panel ordered withdrawn its original October 25, 2011 opinion, published at 659 F.3d 930, and filed a superseding opinion and a new dissent, in plaintiffs' appeal of the district court's dismissal of their action seeking to adjust status and waive inadmissibility.

In the superseding opinion, the panel vacated the district court's judgment and orders denying plaintiffs' motions to amend class certification and to file an amended complaint, following remand in *Duran Gonzales v. Department of Homeland Security*, 508 F.3d 1227 (9th Cir. 2007) ("*Duran Gonzales I*"), which held that plaintiffs were ineligible to adjust status because they were not eligible to receive I-212 waivers because the requisite ten-year period had not elapsed since they last departed from the United States. The panel remanded for reconsideration of plaintiffs' motions to amend to add a challenge to the retroactive application of *Duran Gonzales I*, in light of the new retroactivity test set forth in the intervening en banc decision in *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Callahan would affirm the district court's dismissal of petitioners' case. She would find that this court's adoption of a new rule in 2012 in the unrelated case *Garfias-Rodriguez* does not change the retroactivity of the original 2007 opinion in this case. Judge Callahan would rather hold that under the prudential law-of-the-case doctrine, *Duran Gonzales I* remains retroactive and applicable to petitioners.

## COUNSEL

Matt Adams (argued), Northwest Immigrant Rights Project, Seattle, Washington; Trina Realmuto, Beth Werlin, American Immigration Law Foundation, Washington, D.C.; Marc Van Der Hout, Stacy Tolchin, Van Der Hout, Brigagliano & Nightingale, LLP, San Francisco, California, for Plaintiffs-Appellants.

Elizabeth J. Stevens (argued) and Sherease Pratt, United States Department of Justice, Washington, D.C.; Priscilla To-Yin Chan, Office of the United States Attorney, Seattle, Washington, for Defendant-Appellees.

## ORDER

The opinion filed on October 25, 2011, 659 F.3d 930, is withdrawn. A superseding opinion and dissent will be filed concurrently with this order. The Petition for Rehearing En Banc filed on December 9, 2011 is denied as moot.

**OPINION**

SILVERMAN, Circuit Judge:

Plaintiff-Appellants are Aurelio Duran Gonzales and six other Mexican citizens.  Each of these aliens was previously deported or removed and then subsequently reentered the United States without inspection.  From within the United States, these individuals applied for an adjustment of status and an I-212 waiver of their inadmissibility due to their previous removal and unlawful reentry.  Plaintiffs construed Ninth Circuit law at the time as permitting them to seek such a waiver, notwithstanding the statutory requirement that ten years elapse between an alien's last departure from the United States and his or her waiver application.  *See Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004).  They filed suit to challenge the application of the ten-year requirement to deny them waivers.

After our decision in *Perez-Gonzalez*, however, the Board of Immigration Appeals had in fact disagreed with aspects of that decision and construed the statutory scheme to require satisfaction of the ten-year requirement, even for I-212 waiver applicants already unlawfully present in the United States.  On the first appeal in this matter, we deferred to the BIA's reasonable statutory interpretation, citing *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 981–85 (2005).  *Duran Gonzales v. DHS*, 508 F.3d 1227, 1235–39, 1242 (9th Cir. 2007) ("*Duran Gonzales I*").  Ninth Circuit law thereby became consistent with the agency's position.

On remand, rejecting Plaintiffs' objections and motions, the district court concluded the BIA's rule would have full

retroactive effect, denied motions to amend the complaint and class definition as futile, and dismissed this class action. We affirmed this ruling in October 2011, but stayed the mandate pending the resolution of en banc proceedings in *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc). Ultimately, that decision changed the retroactivity test for cases in which *Brand X* mandates deference to an agency's statutory interpretation, even if there is a contrary prior Ninth Circuit case. Because the mandate never issued for our opinion on this appeal and there has been an intervening change in authority, we decline to apply the putative law of the case, vacate the district court's judgment, and remand for reconsideration of the motions to amend the complaint and class definition in light of the new retroactivity test set forth in *Garfias-Rodriguez*.

## BACKGROUND

Plaintiffs were all previously deported or removed and then unlawfully reentered the United States. After returning to the United States, they filed applications for adjustment of status under 8 U.S.C. § 1255. That statute "allowed the Attorney General to adjust the status of an alien who had entered the United States without inspection to that of a legal permanent resident provided that the alien (1) was admissible to the United States and the beneficiary of an immediately available immigrant visa, and (2) paid an application fee five times the usual fee." *Duran Gonzales I*, 508 F.3d at 1230.

Plaintiffs' path to adjustment of status was complicated by two provisions of the Illegal Immigration Reform and Immigration Responsibility Act of 1996. The first appeared to deny Plaintiffs relief. 8 U.S.C. § 1231(a)(5) provides "for automatic reinstatement of an alien's prior removal or

deportation order when an alien has reentered the United States illegally," and further provides that "'the alien is not eligible and may not apply for any relief' from removal." *Duran Gonzales I*, 508 F.3d at 1230 (quoting 8 U.S.C. § 1231(a)(5)).

The second section suggested a possible exception to this bar. Although 8 U.S.C. § 1182(a)(9)(C)(i)(II) renders inadmissible any previously removed alien "who enters or attempts to reenter the United Sates without being admitted," Section 1182(a)(9)(C)(ii) creates an exception for:

> an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security has consented to the alien's reapplying for admission.

8 U.S.C. § 1182(a)(9)(C)(ii). Two apparent requirements for this exception became the subject of litigation in this Circuit: (1) that the application be made from outside the United States; and (2) that the alien request the waiver more than ten years after his or her last departure from the United States.[1]

Plaintiffs sought Form I-212 waivers of inadmissibility pursuant to 8 U.S.C. § 1182(a)(9)(C)(ii) and 8 C.F.R. § 212.2 from within the United States, and applications for

---

[1] A recent decision interprets the ten-year bar to require the alien to spend ten years outside the United States. *Carrillo de Palacios v. Holder*, No. 09-72059, 2013 WL 310387, at *6 (9th Cir. Jan. 28, 2013).

adjustment of status under 8 U.S.C. § 1255(i). United States Citizenship and Immigration Services denied three of the Plaintiffs' applications on the ground that the ten-year period had not elapsed since the dates of the applicants' last departures from the United States.[2]      8 U.S.C. § 1182(a)(9)(C)(ii). Allegedly, Plaintiffs took these steps to secure waivers in reliance on our opinion in *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004). *Perez-Gonzalez* held that an alien could apply for a Form I-212 waiver from within this country: "[T]he INS committed legal error when it concluded that Perez-Gonzalez could not apply for a Form I-212 waiver from within this country." 379 F.3d at 789. *Perez-Gonzalez* also "concluded that an alien who was inadmissible under section 212(a)(9)(C)(i) of the Act could apply for a waiver under 8 C.F.R. § 212.2 even though the alien's last departure from the United States occurred . . . less than 10 years prior to the date of his request for consent to reapply for admission." *Matter of Torres-Garcia*, 23 I. & N. Dec. 866, 876 (BIA 2006) (citing *Perez-Gonzalez*, 379 F.3d at 794 n.10); *see also Duran Gonzales I*, 508 F.3d at 1241.

In January 2006, the Board of Immigration Appeals ruled in *Matter of Torres-Garcia* that individuals such as Plaintiffs were not eligible for relief, since an I-212 waiver of inadmissibility requires the alien's compliance with the statutory "ten-year bar," even if that alien is applying from within the United States. 23 I. & N. Dec. at 876; *Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1079 (9th Cir. 2010)

---

[2] Our 2007 decision in this case stated that: "The I-212 waiver application is pending in four of the cases and has been denied, along with the adjustment of status applications, in the remaining three cases." *Duran Gonzales I*, 508 F.3d at 1231.

(citation and quotation marks omitted).[3]  DHS subsequently issued a "memorandum direct[ing] field officers that an alien inadmissible under § 212(a)(9)(C) could not file for consent to reapply until that alien had lived abroad for 10 years." *Gonzalez v. DHS*, No. C06-1411-MJP, 2009 WL 302283, at *2 (W.D. Wash. Feb. 6, 2009).  In September 2006, Plaintiffs filed suit to challenge this memorandum as a violation of *Perez-Gonzalez* and sought injunctive and declaratory relief, a temporary restraining order, and class certification. *Gonzalez v. DHS*, No. C06-1411-MJP, 2009 WL 506848, at *2 (W.D. Wash. Feb. 27, 2009).[4]  The district court certified Plaintiffs' proposed class and issued a preliminary injunction. *Gonzalez v. DHS*, 239 F.R.D. 620, 627, 629 (W.D. Wash. 2006).

---

[3] The BIA reasoned:

> *Perez-Gonzalez* allows an alien to obtain a section 212(a)(9)(C)(ii) waiver nunc pro tunc even though such a waiver would have been unavailable to him had he sought it prospectively, thereby placing him in a better position by asking forgiveness than he would have been in had he asked permission.  Such an interpretation contradicts the clear language of section 212(a)(9)(C)(ii) and the legislative policy underlying section 212(a)(9)(C) generally.  We find that the more reasonable interpretation of the statutory framework discussed above is that an alien may not obtain a waiver of the section 212(a)(9)(C)(i) ground of inadmissibility, retroactively or prospectively, without regard to the 10-year limitation set forth at section 212(a)(9)(C)(ii).

*Matter of Torres-Garcia*, 23 I. & N. Dec. at 876.

[4] In both of these 2009 district court case captions, Duran Gonzales's surname is misspelled.

The government filed an interlocutory appeal, and in *Duran Gonzales I*, we held that, pursuant to the Supreme Court's decision in *Brand X*, 545 U.S. at 981–85, we were compelled to follow the BIA's 2006 opinion in *Torres-Garcia*. In *Brand X*, the Supreme Court "held that the circuit court must apply *Chevron* deference to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided that the court's earlier precedent was an interpretation of a statutory ambiguity." *Duran Gonzales I*, 508 F.3d at 1235–36 (citing *Brand X*, 545 U.S. at 980–82). In our 2007 opinion in *Duran Gonzales I*, we held that because the BIA's *Torres-Garcia* ruling was a "clearly reasonable" interpretation of a statute by the agency charged with interpreting and enforcing the statute, and because our prior opinion in *Perez-Gonzalez* was based on the statute's ambiguity, *Brand X* required that we defer to the BIA's interpretation. *Id*. at 1237–39, 1242. Our opinion stated that, "[p]ursuant to *In re Torres-Garcia*, plaintiffs as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers." *Id*. at 1242. Accordingly, we vacated the district court's injunction and remanded the matter. *Id*. at 1242–43.

Plaintiffs filed a petition for rehearing and suggestion for rehearing en banc which included an argument that the opinion should not be applied retroactively. The panel denied the petition for rehearing, a majority of the active judges declined the suggestion for rehearing en banc, and our mandate issued in January 2009, over a year after the opinion was filed.

On remand, Plaintiffs sought to prevent the retroactive application of *Duran Gonzales I* to class members whose I-212 waiver applications were filed *prior to* that decision and

in purported reliance on preexisting Ninth Circuit precedent. *Gonzalez*, 2009 WL 302283, at \*4; *Gonzalez*, 2009 WL 506848, at \*4.  To this end, they filed a motion to amend the complaint to add a challenge to *Duran Gonzales I*'s retroactive application as well as a motion to amend the class definition and narrow it to a subset of the certified class.  *Id.* at \*3.  In the first of a pair of orders, the district court held that *Duran Gonzales I* was binding and denied Plaintiffs' motion for provisional class certification and preliminary injunctive relief.  *Gonzalez*, 2009 WL 302283, at \*4.  It rejected Plaintiffs' argument against retroactivity because "[t]he Circuit Court stated conclusively that the BIA's interpretation of the statute applied to Plaintiffs," and held that "[t]he retroactive application of *Torres Garcia* is simply not an open question before this Court."  *Id.*  The district court proceeded to deny Plaintiffs' motions to amend the class definition and for leave to file an amended complaint as futile because neither amendment could change the presumptive retroactive effect of *Duran Gonzales I*.  *Gonzalez*, 2009 WL 506848, at \*4.  The court then dismissed the action.  *Id.*  Plaintiffs timely appealed, arguing that *Duran Gonzales I* should be given prospective effect only.

On October 25, 2011, we issued *Duran Gonzales II*, the original version of this opinion, expressly holding that *Duran Gonzales I* would have full retroactive effect.  *Duran Gonzales v. DHS*, 659 F.3d 930, 939–41 (9th Cir. 2011) ("*Duran Gonzales II*").  However, we stayed the mandate pending the resolution of the en banc proceedings in *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc).  Ultimately, that en banc decision issued and set forth a different test for retroactivity in *Brand X* cases, the multi-factor inquiry articulated in *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982).  *Garfias-*

*Rodriguez*, 702 F.3d at 517–20.  The government urges us to apply the law-of-the-case doctrine and hold that *Duran Gonzales I* has already settled the retroactivity question for this case.   We reject that argument and hold that the intervening en banc decision in *Garfias-Rodriguez* requires us to withdraw our prior opinion, vacate the district court's judgment, and remand the case for further proceedings.  The district court must decide in the first instance whether or not Plaintiffs' dual motions to amend are still futile in light of this Court's adoption of the *Montgomery Ward* retroactivity test for cases in which *Brand X* compels our deference to an agency's statutory interpretation.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. Although the district court's denial of leave to amend is reviewed for abuse of discretion, *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009), as is an order on class certification, *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008), the essence of Plaintiffs' appeal is that the district court erred in holding that *Duran Gonzales I* applied to them. This underlying conclusion of law is reviewed de novo.  *See Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 650 (9th Cir. 2007).

## DISCUSSION

### A.  Whether *Duran Gonzales I* May Be Retroactively Applied Under *Garfias-Rodriguez* and *Montgomery Ward*.

This brings us to the question of whether *Duran Gonzales I* may still be retroactively applied in light of *Garfias-*

*Rodriguez*.  *Duran Gonzales I* did not expressly address retroactivity.  Instead, the panel merely stated that Plaintiffs "as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers." 508 F.3d at 1242.  But reaching this conclusion did not explicitly resolve the retroactivity question, and retroactivity was clearly presented to us on this second appeal, which resulted in an initial opinion affirming the retroactive application of *Duran Gonzales I*.**[5]**  Citing *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97–98 (1993), we stated that "[b]ecause this court applied its holding in [*Duran Gonzales I*] to the parties before it, the ruling is retroactive." *Duran Gonzales II*, 659 F.3d at 939.  We added that even if *Duran Gonzales I* could not be read as "clearly holding that it had retroactive application (by applying its ruling to the parties before it), the fact that [*Duran Gonzales I*] did not otherwise 'reserve the question whether its holding should be applied to the parties before it' would be dispositive."  *Id*. (quoting *Harper*, 509 U.S. at 97–98).

Our recent en banc opinion in *Garfias-Rodriguez* adopts a different test for retroactivity that is now the law of the Ninth Circuit.  Although recognizing that when we decided *Duran Gonzales I*, the controlling Supreme Court rule held

---

**[5]** Again, by a separate order, issued concurrently herewith, we have withdrawn that prior opinion.

that retroactive application was the presumptive norm,[6] *Garfias-Rodriguez* adopted a different approach, holding:

> [W]hen we overturn our own precedent following a contrary statutory interpretation by an agency authorized under *Brand X*, we analyze whether the agency's statutory interpretation (to which we defer) applies retroactively under the test we adopted in *Montgomery Ward* [*& Co., Inc. v FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982)] if the issue is fairly raised by the parties.

702 F.3d at 520. *Garfias-Rodriguez* held that such instances of *Brand X* deference must be treated as "if the agency had changed its own rules," *id*. at 516, and thus changed the presumptive norms for cases such as this one to "allow[] us to take into account the intricacies of a *Brand X* problem." *Id*. at 518. We explained that in applying the *Montgomery Ward* test, "we have done so on a case-by-case basis, for example, by analyzing whether a petitioner *actually* relied on

---

[6] We noted:

> The Supreme Court has emphasized that retroactive application is the presumptive norm, and implied that any exceptions to this rule must be narrow. *Harper*, 509 U.S. at 95–96. It has also emphasized that we are not to perform a retroactivity analysis on a case-by-case basis, but that we must decide whether a rule should be retroactive (or not) as applied to all cases currently pending. *Id*. at 96–97.

*Garfias-Rodriguez*, 702 F.3d at 517 (parallel citations omitted).

a past rule, or by concluding that retroactivity *as applied* is impermissible." *Id*. at 519 (emphasis in original).

We then proceeded to apply the five-factor *Montgomery Ward* test to Garfias-Rodriguez himself. The factors include:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Id*. at 518 (quoting *Montgomery Ward*, 691 F.2d at 1333). We nonetheless concluded that Garfias-Rodriguez was not entitled to relief because the balance of factors favored the government. *Id*. at 523.

Plaintiffs argue that we should apply *Garfias-Rodriguez* to their case, vacate the district court's dismissal of their action, and remand the case to the district court to apply the *Montgomery Ward* test in the first instance.

## B. The Law-of-the-Case Doctrine Will Not Be Applied Here Where There Has Been An Intervening Change in Authority.

Before we can apply the *Montgomery Ward* test to Plaintiffs, we must consider whether the holding in *Garfias-Rodriguez* should be applied to this case. The government argues that the law-of-the-case doctrine should be invoked to preclude its application here. We disagree.

In this context, the prudential law-of-the-case doctrine precludes one panel of an appellate court from reconsidering questions which have already been decided on a prior appeal in the same case. *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995). However, we have noted that there are exceptions to this prudential rule:

> Although an appellate panel's observance of the doctrine is discretionary, a prior decision should be followed unless (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

*Id*. Having announced a retroactivity test for *Brand X* cases that is at odds with the analytical framework invoked in *Duran Gonzales I*, we are compelled to conclude that the legal change effected by *Garfias-Rodriguez* falls squarely within the second exception for "intervening controlling

authority."[7]   Accordingly, we will not apply the law-of-the-case doctrine to bar application of *Garfias-Rodriguez*.

## C. Application of The *Montgomery Ward* Test on Remand

We have withdrawn our prior opinion on this appeal and hereby vacate the district court's judgment.  We will not decertify the class, since no such motion was made below. Instead, upon remand, the government will have an opportunity to file such a motion, if it so chooses.  Plaintiffs will also have an opportunity to re-file any motions to amend the complaint and the class definition, as well as any motion for a preliminary injunction, if they so choose.  If these motions are filed, the district court shall reconsider whether amendments to the complaint and class definition are still futile in light of the *Montgomery Ward* test and Federal Rule of Civil Procedure 23's requirements for class actions.

We express no opinion on the viability of any claims or any class or subclass definitions under the analytical framework announced in *Garfias-Rodriguez–i.e.*, whether the *Montgomery Ward* factors can be adjudicated on a class-wide basis.  Particularly given the stage of this litigation and the fact that the record has not been fully developed, as in

---

[7] The withdrawn panel decision from this second appeal relied in part on *Morales-Izquierdo*, 600 F.3d at 1089, which rejected the application of the multi-factor *Montgomery Ward* test for retroactivity where the courts defer to the BIA's interpretation of a statute.  *Duran Gonzales II*, 659 F.3d at 935–36 & n.3.  That case and our reliance on it were expressly overruled by the en banc court in *Garfias-Rodriguez*.  702 F.3d at 516.

*Garfias-Rodriguez*,[8] it would not be proper for us to apply that test in the first instance. *Cf. Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir. 2001) (holding that where "the factual record is sufficiently well developed . . . we may evaluate for ourselves whether the provisions of Rule 23 have been satisfied" and no remand is necessary).

## CONCLUSION

The district court's judgment is **VACATED**, and this case is **REMANDED** for further proceedings consistent with this opinion.

---

CALLAHAN, Circuit Judge, dissenting:

In 2007, we held that petitioners "as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers." *Duran Gonzales v. DHS*, 508 F.3d 1227, 1242 (9th Cir. 2007) ("*Duran Gonzales I*"). In January 2009, we denied petitioners' request for rehearing and rehearing en banc, which included an argument that our opinion should not be applied retroactively; our mandate issued on January 23, 2009. In October 2011, we issued an opinion reiterating that *Duran Gonzales I* had full retroactive effect, *Duran Gonzales v. DHS*, 659 F.3d 93 (9th Cir. 2011), and petitioners filed a petition for rehearing and rehearing en banc. Thereafter, in October 2012, we issued an en banc

---

[8] *See also Carrillo de Palacios*, 2013 WL 310387, at *4–5 (applying *Montgomery Ward* test to petitioner's case where complete administrative record was available on petition for review of a BIA decision).

opinion in *Garfias-Rodriguez*, 702 F.3d 504 (9th Cir. 2012), adopting a new rule for retroactivity in certain cases. I respectfully disagree with my colleagues that our adoption of a new rule in 2012 in an unrelated case changes the retroactivity of our 2007 opinion. Rather, I would hold that under the prudential law-of-the-case doctrine, *Duran Gonzales I* remains retroactive and applicable to the petitioners.

## I

The prudential law-of-the-case doctrine precludes one panel of an appellate court from reconsidering questions that have already been decided on a prior appeal in the same case. In *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995), we explained:

> "Under the law of the case doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) (internal quotations and brackets omitted). Although an appellate panel's observance of the doctrine is discretionary, a prior decision should be followed unless (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial. *Id.* The doctrine, however, applies only to issues considered and actually decided by the first court. *United*

> *States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995).

We reiterated our understanding of the doctrine in *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Department of Agriculture*, 499 F.3d 1108, 1114 (9th Cir. 2007), stating:

> [T]he district court should abide by "the general rule" that our decisions at the preliminary injunction phase do not constitute the law of the case. *See id.; see also City of Anaheim v. Duncan*, 658 F.2d 1326, 1328 n.2 (1981). Any of our conclusions on pure issues of law, however, are binding. *See This That And The Other Gift And Tobacco, Inc. v. Cobb County*, 439 F.3d 1275, 1284–85 (11th Cir. 2006); 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2002) ("A fully considered appellate ruling on an issue of law made on a preliminary injunction appeal . . . become[s] the law of the case for further proceedings in the trial court on remand and in any subsequent appeal.").

The prudential considerations underlying the law-of-the-case doctrine support its application here. In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815–16 (1988), the Supreme Court noted that:

> "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L. Ed.2d 318 (1983) (dictum). This rule of practice promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984).

## II

*Duran-Gonzales* was decided in 2007. Its holding is clear: "plaintiffs as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers." 508 F.3d at 1242. There is no reasonable argument that the decision was not clear and dispositive. Indeed, the district court properly found it to be clear and dispositive, and it has been cited by numerous courts.

Although the majority relies on the second exception in *Hegler* to jettison the law-of-the-case doctrine in this case, none of the three exceptions require or justify such a course. *See Hegler*, 50 F.3d at 1475.

First, the decision in *Duran Gonzales I* is not clearly erroneous, nor will its enforcement work a manifest injustice. *Garfias-Rodriguez*, 702 F.3d at 511, affirmed *Duran Gonzales I*'s underlying decision to apply the BIA's decision in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), rather than the Ninth Circuit's prior opinion in *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004). Moreover, *Garfias-Rodriguez* recognizes that *Duran*

*Gonzales I* properly applied the then-applicable standard for retroactivity. *Garfias-Rodriguez*, 702 F.3d at 517. Citing such Supreme Court cases as *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), and *Harper v. Virginia. Department of Taxation*, 509 U.S. 86 (1993), the en banc opinion noted:

> The Supreme Court has emphasized that retroactive application is the presumptive norm, and implied that any exceptions to this rule must be narrow. *Harper*, 509 U.S. at 95–96, 113 S. Ct. 2510. It has also emphasized that we are not to perform a retroactivity analysis on a case-by-case basis, but that we must decide whether a rule should be retroactive (or not) as applied to all cases currently pending. *Id*. at 96–97, 113 S. Ct. 2510.

*Garfias-Rodriguez*, 702 F.3d at 517. The opinion then explicitly states that it is adopting a "new rule" that it believed to be a "better fit for this situation," where *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005) ("*Brand X*"), mandates deference to an agency's statutory interpretation, that is contrary to a prior Ninth Circuit opinion. *Id*. at 518. Thus, *Garfias-Rodriguez* does not suggest that either the substantive decision in *Duran Gonzales I* or its retroactive application was "clearly erroneous."

Nor does a review of *Garfias-Rodriguez*'s application of the multi-factor inquiry in *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982), suggest that applying *Duran Gonzales I*'s substantive holding to the petitioners "would work a manifest injustice." *Hegler*, 50 F.3d at 1475.

In *Garfias-Rodriguez*, we applied the *Montgomery Ward* criteria to Garfias-Rodriguez and concluded that he did not qualify for relief. *Garfias-Rodriguez*, 702 F.3d at 523. Because the policies behind the application of the criteria are similar for both cases, the result here is likely to be the same. As in *Garfias-Rodriguez*, the second and fifth factors favor the government. *Id*. at 521–23. In light of the government's interpretation of the underlying statutes, the support for that position by other circuit courts, and the BIA's decision in *Torres-Garcia*, *Duran Gonzales I* was neither "an abrupt departure from well established practice" nor a "complete surprise." *Id*. at 521. Also, the statutory interest in applying the new rule is at least as great here as in *Garfias-Rodriguez*, which recognized that "non-retroactivity impairs the uniformity of a statutory scheme and the importance of uniformity in immigration law is well established." *Id*. at 523. Assuming that here, as in *Garfias-Rodriguez*, the first factor does not apply,[1] and the fourth factor – the degree of

---

[1] In *Garfias-Rodriguez*, we noted that the first factor – whether the particular case is one of first impression – "may not be as well suited to the context of immigration law," and noted that in any event, "any question of unfairness in applying a new rule in cases of 'first impression' or 'second impression,' such as surprise or detrimental reliance, is fully captured in the second and third *Montgomery Ward* factors." 702 F.3d at 521. However, if the first factor is applied, it favors the government because the agency has consistently held that an alien could not apply for reinstatement from within the United States within ten years of having been removed. Thus, neither *Perez-Gonzalez* nor *Duran Gonzales I* was a case of first impression, but rather represented different stages in the continuing dialogue between the agency and the Ninth Circuit.

burden – favors petitioners,[2] they would have to make a strong showing on the second factor, reliance, just to balance the factors.  But petitioners would be hard pressed to make such a showing.[3]  The opinion in *Garfias-Rodriguez* suggests that incurring an additional filing fee and disclosing one's illegal presence in the United States may not constitute reliance.  *See* 702 F.3d at 522; *see also Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 44–46 (2006).[4]  Thus, it does not

---

[2] In *Garfias-Rodriguez*, we noted:

> Although the relief he applied for is ultimately discretionary, "'[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation.'" *Miguel–Miguel* [*v. Gonzales*], 500 F.3d [941], 952 (quoting *INS v. St. Cyr*, 533 U.S. 289, 325, 121 S. Ct. 2271, 150 L. Ed.2d 347 (2001)).  Furthermore, "deportation alone is a substantial burden that weighs against retroactive application of an agency adjudication." *Id*.

702 F.3d at 523.

[3] Our opinion in *Garfias-Rodriguez* notes that the "second and the third factors are closely intertwined," and that "[w]e have made it clear in this circuit that these two factors will favor retroactivity if a party could reasonably have anticipated the change in the law such that the new requirement would not be a complete surprise."  702 F.3d at 521 (citation and internal quotation marks omitted).

[4] The Supreme Court commented:

> [I]t is the conduct of remaining in the country after entry that is the predicate action; the statute applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country.  It is therefore the alien's choice to continue

appear that maintaining *Duran Gonzales I's* retroactivity would work a "manifest injustice."

The third *Hegler* exception does not apply because no trial was held on remand.  Moreover, petitioners' effort on remand to challenge *Duran Gonzales I*'s retroactive effect and to narrow the class did not present "substantially different evidence."  *Hegler*, 50 F.3d at 1475.

The majority, however, reasons in just a single sentence, that the second *Hegler* exception is met.  It states: "Having announced a retroactivity test for *Brand X* cases that is at odds with the analytical framework invoked in *Duran Gonzales I*, we are compelled to conclude that the legal change effected by *Garfias-Rodriguez* falls squarely within the second exception for 'intervening controlling authority.'"  Maj. at 15–16.

But *Garfias-Rodriguez* is not an "intervening controlling authority."  First, it comes after the issuance of our mandate in *Duran Gonzales I*.  Second, as noted, *Garfias-Rodriguez* accepted that the court should defer to the intervening

---

his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment the Government finds him out.

548 U.S. at 44.

agency's decision.[5]  702 F.3d at 511.  Thus, *Garfias-Rodriguez* agrees with the substance of *Duran Gonzales I*. Indeed, *Garfias-Rodriguez* accepted the Board of Immigration Appeals decision in *In re Briones*, 24 I. & N. Dec. 355, 371 (BIA 2007), and held that it was reasonable and entitled to deference.[6]  702 F.3d at 514.

The en banc court then applied its ruling to Garfias-Rodriguez and in doing so adopted a new rule.  But *Garfias-*

---

[5] The en banc court explained:

> [W]e addressed the effect of *Torres–Garcia* in *Duran Gonzales I*, 508 F.3d 1227.  Applying the framework established by *Chevron* and *Brand X*, we deferred to the BIA's interpretation of § 212(a)(9)(c) in *Torres–Garcia*, and overruled *Perez–Gonzalez*.  *Id.* at 1242. We found that in *Perez–Gonzalez* we had determined that the relevant sections of the INA were ambiguous and that the BIA had not, at that time, issued a controlling decision that resolved this ambiguity.  *Id.* at 1237–38; *see Brand X*, 545 U.S. at 982, 125 S. Ct. 2688.  We concluded that the BIA's interpretation of § 212(a)(9)(C)(i)(II) in *Torres–Garcia* was "clearly reasonable and is therefore entitled to *Chevron* deference under *Brand X*." *Duran Gonzales I*, 508 F.3d at 1242.  Accordingly, we concluded that "we are bound by the BIA's interpretation of the applicable statutes in *In re Torres–Garcia*, even though that interpretation differs from our prior interpretation in *Perez–Gonzalez*." *Id*.

702 F.3d at 511.

[6] The en banc opinion states: "We conclude that aliens who are inadmissible under § 212(a)(9)(C)(i)(I) are not eligible for adjustment of status under § 245(i), and overrule *Acosta* to the extent it holds otherwise." *Garfias-Rodriguez*, 702 F.3d at 514.

*Rodriguez* says nothing about the law-of-the-case doctrine, and does not indicate that it was to be applied retroactively to past instances in which the Ninth Circuit had deferred to an intervening agency decision pursuant to *Brand X*.[7]  Rather, in light of the facts that the application of the new standard did not result in any relief to Garfias-Rodriguez, and that five judges took exception to the majority opinion in five different opinions, it seems questionable that the six judges in the majority contemplated that the new standard they were adopting would be applied retroactively.  If they had, one would have expected them to so indicate.  Instead, they held that the *Montgomery Ward* standard was to be applied on a case-by-case basis where the issue is fairly raised.[8]  702 F.3d at 519–20.

Here, the retroactivity of *Duran Gonzales I* is not fairly raised.  *Duran Gonzales I* stated that, as a matter of law, petitioners were "not eligible to adjust their status because they are ineligible to receive I-212 waivers."  508 F.3d at 1242.  Petitioners sought rehearing and rehearing en banc, but their request was denied and our mandate issued on January 23, 2009.  That should have been the end of the matter.

---

[7] *Garfias-Rodriguez* did not present a law-of-the-case issue because there was no final decision by the Ninth Circuit.  Although a three-judge panel had initially denied Garfias-Rodriguez's claim for relief, *Garfias-Rodriguez v. Holder*, 649 F.3d 942, 953 (9th Cir. 2011), that opinion never became final and was superseded by our grant of rehearing en banc.  *See Garfias-Rodriguez v. Holder*, 672 F.3d 1125 (9th Cir. 2011).

[8] The direction that the *Montgomery Ward* standard is to be applied case-by-case raises questions as to whether a class action can be maintained when a relief turns on the application of the individualized inquiry set forth in *Montgomery Ward*.  The majority leaves it to the district court to wrestle with this issue in the first instance.

Petitioners, however, persisted in reiterating their arguments concerning retroactivity both in the district court and this court until, well after we had issued an opinion denying their second appeal, their argument found favor in another case concerning another statute.

Petitioners' persistence may be admirable, but this is precisely the type of situation that is covered by the law-of-the-case doctrine.  Otherwise, the orderly development of the law will be inhibited as panels may be reluctant to make adjustments for fear they will undermine prior final decisions.  Also, parties will be encouraged to follow petitioners' lead and continually raise already-decided issues in the hope that during the resulting delay some decision will issue that supports their perspective.

The prudential concerns underlying the law-of-the-case doctrine should be controlling where, as here, the question is whether a new Ninth Circuit opinion in a separate and distinct case, which adopts a new rule of retroactivity, should apply to a ruling that has been final for years.  Petitioners, whose claims were determined to be barred as a matter of law in *Duran Gonzales*, now find themselves fortuitously again before the Ninth Circuit.  Because I would find that petitioners' situation does not come within any of the three exceptions to the law-of-the-case doctrine that we recognized in *Hegler*, 50 F.3d at 1475, I would hold that our 2012 decision in *Garfias-Rodriguez* does not change the retroactivity of our 2007 opinion in *Duran Gonzales I*.  Accordingly, I would affirm the district court's dismissal of petitioners' case.